SNYDER & SNYDER, LLP
94 White Plains Road
Tarrytown, New York 10591
Tel. (914) 333-0700
Fax (914) 333-0743
Robert D. Gaudioso, Esq. (RG-3829)
rgaudioso@snyderlaw.com
Attorneys for Plaintiff T-Mobile Northeast LLC

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY- NEWARK VICINAGE
---------------------------------------------------------------------------x

T-MOBILE NORTHEAST LLC,

                           Plaintiff,

             -against-

TOWN OF HARRISON, TOWN OF
HARRISON ZONING BOARD OF ADJUSTMENT,

                         Defendants.

---------------------------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)**

Docket No. 21-cv-13627

T-Mobile Northeast LLC, ("T-Mobile" or "Plaintiff"), through its attorneys Snyder & Snyder, LLP, as and for its Complaint against the Town of Harrison ("Town") and the Town of Harrison Zoning Board of Adjustment ("ZBA") (collectively, "Defendants") respectfully allege as follows:

## LOCAL CIVIL RULE 10.1 STATEMENT

T-Mobile Northeast LLC
4 Sylvan Way
Parsippany, NJ 07054

Town of Harrison
318 Harrison Avenue,
Harrison, New Jersey 07029

Town of Harrison Zoning Board of Adjustment
318 Harrison Avenue,
Harrison, New Jersey 07029

## NATURE OF THE ACTION

1.     This action arises from Defendants' unreasonable, discriminatory, and unsupportable denial of Plaintiff's application for variances and site plan approval ("Application") from the Defendant ZBA to install a Wireless Telecommunication Facility ("Facility"), including panel antennas and related equipment on the rooftop of the existing building ("Existing Building"), together with related radio equipment to be located within an equipment room within the first floor of the Existing Building, at the premises known as 600 Frank E. Rogers Boulevard North, Harrison, New Jersey 07029 (the "Premises"), within the Neighborhood Commercial ("NC") Zoning District. The Facility includes a stealth design by proposing reflective concealment film to cover the antennas.

2.     Defendants have violated Section 704 of the Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Communications Act") and codified at 47 U.S.C. § 332(c)(7)(B) and § 253(a), by virtue of Defendants' effective prohibition of personal wireless services and telecommunications services, unreasonable discrimination among providers of functionally equivalent services,  and the lack of substantial evidence upon which to support its denial, and by basing its decision upon the environmental effects of radio frequency emissions, all of which warrant a reversal of the denial together with injunctive relief mandating that Defendants issue all required approvals for the construction of the Facility pursuant to the Communications Act.

3.     Defendant ZBA's denial of the Application is arbitrary, capricious, and unreasonable under New Jersey's Municipal Land Use Law ("MLUL"), as the ZBA failed to properly conduct the balancing test of the positive and negative criteria, and explain how, on balance, the approval of the Application and issuance of the variances would cause a substantial

detriment to the public good.

4.    Plaintiff respectfully requests that this Court enter a declaratory judgment that Defendant ZBA's denial of the Application violates 47 U.S.C. § 332 and § 253(a), is preempted by the Communications Act and by the regulations and orders of the FCC, and is unlawful under state law. Plaintiff further requests that this Court issue permanent injunctive relief (a) reversing Defendant ZBA's denial of the Application and directing Defendants to grant the variances, site plan approval and all necessary approvals to construct the Facility; (b) directing Defendants, through its officers and agents, to issue all ancillary permits, including, without limitation, the variances and site plan approval for which Plaintiff applied; and (c) prohibiting Defendants, and any officer, employee, or agent of Defendants, from taking any further action that would prohibit or have the effect of prohibiting Plaintiff from constructing and operating the Facility. Plaintiff also requests expedited review of the matters set forth in this Complaint in accordance with 47 U.S.C. § 332(c)(7)(B)(v).

## THE PARTIES

5.    Plaintiff, T-Mobile Northeast LLC ("T-Mobile") is a Delaware limited liability company and is a wholly owned subsidiary of T-Mobile USA, Inc., a Delaware corporation which has its principal place of business in Bellevue, Washington. T-Mobile Northeast LLC and T-Mobile USA, Inc., are registered to do business in the State of New Jersey and maintain an office at 4 Sylvan Way, Parsippany, New Jersey 07054. T-Mobile Northeast LLC is the operating entity for T-Mobile USA, Inc. in the Northeast Region of the United States including the State of New Jersey. T-Mobile Northeast LLC owns and operates assets including personal wireless services facilities to provide personal wireless services including Personal Communications Services (PCS) and Advanced Wireless Services (AWS), as defined by federal

law.  T-Mobile USA, Inc. and its related entities such as T-Mobile Northeast LLC have been issued licenses by the Federal Communications Commission ("FCC") to provide wireless telephone and telecommunications services throughout the Northeast and Mid-Atlantic states, including New Jersey and specifically the Town, in order to provide personal wireless services to the public.

6.     Defendant Town of Harrison is a municipality duly organized and existing under the laws of the State of New Jersey, having an address at Town Hall, 318 Harrison Avenue, Harrison, New Jersey 07029.

7.     Defendant ZBA is the duly constituted Zoning Board of Adjustment of the Town of Harrison, authorized to hear and decide applications requesting variance and site plan approval and related approvals as may be required by the Town's Zoning Code and having an address at Town Hall, 318 Harrison Avenue, Harrison, New Jersey 07029.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to: (a) 47 U.S.C. § 332(c)(7)(B)(v) of the Communications Act because Plaintiff has been adversely affected and aggrieved by Defendants' actions in violation of § 332(c)(7)(B) of the Communications Act; and (b) 28 USC § 1331 because this is a civil action that presents federal questions arising under the Communications Act.

9.     This Court has supplemental jurisdiction over any and all New Jersey State Law claims pursuant to 28 U.S.C. §1367. The Court has authority to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

10.    This Court has personal jurisdiction over Defendants in that Defendants committed the specific acts complained of herein in the judicial district for the United States District Court, District of New Jersey, Newark, and Defendants reside in this District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims stated herein arose in the judicial district for the United States District Court, New Jersey District, Newark, and Defendants reside in this District.

Expedited Review Requirement

12.     Expedited review of this action is required pursuant to Section 704 of the Communications Act, as codified at § 332(c)(7)(B)(v) of the Communications Act (providing that "[t]he court shall hear and decide such action on an expedited basis").

**STATEMENT OF FACTS**

The Important Federal Interests at Issue in This Case

13.     Section 332 of the Communications Act, 47 U.S.C. § 332(c)(7), governs federal, state, and local government regulation of the siting of personal wireless service facilities, such as the Facility at issue here.

14.     The Communications Act, while preserving state and local authority over the placement, construction or modification of wireless facilities, expressly preempts state or local governments from effectively prohibiting the provision of personal wireless services and from implementing decisions that are not supported by substantial evidence

15.     The Communications Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with Section 332(c)(7) of the Act may seek review in the federal courts and the court "shall hear and decide such action on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v).

The Wireless Service Sought to be Provided

16.     T-Mobile provides commercial mobile services, personal and advanced wireless services, as well as other telecommunications services, as those terms are defined under

5

federal law, to its customers in the Town of Harrison and throughout the State of New Jersey

17.  T-Mobile, as the operating entity for T-Mobile USA in the state of New Jersey, uses licenses issued by the FCC, to provide wireless service in the Town of Harrison and surrounding region.

18.  T-Mobile constructs telecommunications services and personal wireless service facilities that allow T-Mobile to create and maintain a network of "cell sites," each of which consists of antennas and related electronic communications equipment designed to send and receive radio signals.

19.  In order for its wireless network to perform reliably in a given area, sufficient cell sites must be located, constructed and operating in that area.  If there is not a functioning cell site within a given area, or if the cell sites serving an area lack sufficient service to handle the amount of customer demand for a limited wireless spectrum, there will be no reliable service for customers within that area. Customers who live, travel, or work in the area will experience an unacceptable level of service, including dropped calls, connection failures, and/or connection speeds below acceptable levels.

<u>State and Local Government Zoning Requirements</u>

20.  The Town regulates wireless telecommunications facilities, like the Plaintiff's proposed Facility, in Section 17-82.10(B)(5) of the Town of Harrison's Town Code ("Wireless Code").

21.  The Wireless Code permits towers and antennas as conditional uses within the Community Commercial ("CC") and Industrial Zones ("I") provided that no cellular antennas shall be sited within two hundred fifty (250) feet of an SF-1, SF-2, SF-3, 2F-1, 2F-2, 3F, A or SH zone and are in compliance with the other requirements of the Wireless Code.

22.     The Town determined that a facility within the NC district could be considered a conditional use, but that Plaintiff's proposed Facility required a use variance[1] because the Facility will not be more than 250 feet away from a 2F-1 zone.

23.     The Town also determined a NJSDA 40:55D-70(d)(6) height variance was required for the proposed height of the antennas exceeding the maximum height for the NC zoning district, although it must be noted that the Existing Building itself exceeded the maximum height, and the Wireless Law permits antennas to be at any height as long as it's the minimum height necessary.

24.     The Existing Building on the Premises has existing nonconforming setbacks that would not be exacerbated by the proposed antennas to be located on the roof, and therefore no bulk variances are required for the Facility. Additionally, as part of its application for a use variance under New Jersey law the bulk or "c" variances are subsumed in the application for the use variance. However, to the extent that such bulk variances were required by the Town, T-Mobile included the request for the bulk variances in its Application.

25.     Under MLUL, a local zoning authority may,

> [i]n particular cases for special reasons, grant a variance to allow… (1) a use or principal structure in a district restricted against such use or principal structure… (3) deviation from a specification or standard… pertaining solely to a conditional use… No variance or other relief may be granted under the terms of this section, including without a showing that such variance or other relief can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance.

N.J.S.A. 40:55D-70(d).

---

[1] It should be noted that the Defendants, in many instances failed to distinguish whether Plaintiff's Facility required a variance under N.J.S.A. 40:55D-70(d)(1) or under NJSDA 40:55D-70(d)(3). However, T-Mobile's Application met the standard for either use variance.

26.     Accordingly, under the MLUL to obtain a use variance, an applicant must demonstrate that there are "special reasons" for granting the variance, and that the requested relief can be granted without causing a substantial detriment to the public good. N.J.S.A 40:55D-70(d). The "special reasons" are commonly referred to as the "positive criteria" and can be demonstrated if the use is inherently beneficial, or the site is particularly well suited for the use.

27.     Under New Jersey Law a site proposed for a wireless facility, such as T-Mobile's Facility herein, is considered to be particularly suited for the proposed use, when the applicant can show that it is licensed by the FCC and provides credible testimony establishing that a need for the facility exists at the proposed location. *See N.Y. SMSA, Ltd. P'ship v. Bd. of Adjustment of Weehawken*, 370 N.J. Super. 319, 340 (App. Div. 2004).

28.     Under the MLUL, after the positive criteria is satisfied, the applicant must also demonstrate the "negative criteria" – i.e., that the variance can be granted without substantial detriment to the public good and that it will not substantially impair the intent and purpose of the zone plan and zoning ordinance.

29.     The negative criteria must be reviewed under the balancing test established in *Sica v. Wall Township Board of Adjustment*, 127 N.J. 152 (1992). Under the *Sica* balancing test, FCC licensed applicants, such as T-Mobile, are entitled to a more deferential standard with respect to the negative criteria, and the burden of proof required is significantly less than other commercial uses.

30.     The first step of the *Sica* balancing test is to identify what public interest is at stake and how compelling the public interest actually is, including the type of wireless facility being proposed, the licenses and authorities of the provider of service, and public benefits flowing from the proposed facility.  The next step is to identify what detrimental effects, if any, may ensue

from the grant of the variance. [2] Then the reviewing body must determine whether any legitimate detrimental effects can be mitigated by imposing reasonable conditions of approval. Finally, the reviewing body must weigh the positive and negative criteria presented in the application and determine whether, on balance, the requested use variance can be granted without causing substantial detriment to the public good and substantial impairment of the intent and purpose of the zone plan and zoning ordinance.

<u>The Proposed Facility and Application Process</u>

31.     Based upon research and analysis by its radio frequency engineers, T-Mobile determined that it has a significant gap in its ability to provide service in the Town of Harrison in the vicinity of and in the areas surrounding the Premises, which area generally includes the area bounded by Woodland Avenue, Sheridan Avenue, Patterson Street, and Cross Street, and the surrounding neighborhoods.

32.     This gap is significant based on the population served and traffic in the area exceeding the capacity of the surrounding existing facilities and must be remedied in order for T-Mobile to provide reliable personal wireless service to the area.

33.     T-Mobile's radio frequency engineers identified a search area within which a new facility would need to be constructed to remedy the significant gap in service. T-Mobile then investigated suitable properties within the area that were viable for a wireless communications facility based on the Town Code's listed priorities.  A viable candidate would have to fill the gap in service, be leasable, and be capable of having a facility constructed thereon.

34.     There are no existing wireless communications facilities in the search area

---

[2] It must be noted that under New Jersey Law, alleged effects on adjacent properties in terms of devaluation of property value cannot be considered unless made by expert testimony.  *See Cell South v. West Windsor Zoning Board of Adj.,* 172 N.J. 75, 87-88 (2002).

that can accommodate collocation and remedy T-Mobile's significant gap in service.

35.    The CC and I zoning districts are located too far away from the area in need of service (i.e. where the gaps exist) to be used by T-Mobile to remedy the identified significant gap in service.

36.    T-Mobile made good faith efforts to investigate thoroughly the possibility of other viable less intrusive alternatives before concluding that no other feasible or less intrusive plan, besides the proposed Facility at the Premises, was available.

37.    After thoroughly evaluating alternative properties within the applicable search area, T-Mobile concluded that the Facility at the Premises (i) would adequately address the significant gap in service identified; (ii) had a property owner willing to lease space on the roof of and within the Existing Building for the construction of the Facility; (iii) that the Existing Building is an existing tall structure on which T-Mobile could collocate its equipment thus eliminating the need for the construction of a freestanding tower; and (iv) was particularly suited for constructing and maintaining the Facility.

38.    T-Mobile entered into a site lease agreement with the owner of the Premises and obtained permission to seek the necessary local approvals to develop a wireless communications facility on the roof of and within the Existing Building.

39.    The Facility includes antennas to be ballast mounted at the minimum height necessary on three sides of the Existing Building, with the top of the antennas reaching 50 feet and 3 inches, and incorporates a stealth design as the antennas are proposed to be covered in concealment film greatly reducing their visibility, and related equipment will be installed within the Existing Building completely shielded from public view.

40.     On or about December 3, 2020, T-Mobile submitted the Application and filing fee for the appropriate variances and approvals to construct the Facility at the Premises.

41.     In the materials submitted in support of its Application, among other things, T-Mobile included (a) the Town's Application forms and application fee; (b) a narrative description demonstrating (i) how the Application meets the requirements for the issuance of the requested variances and required approvals, (ii) that there are special reasons to support the issuance of all necessary approvals for the Facility, and (iii) that the Premises is particularly suited for the proposed use; (c) an Independent Radio Frequency Justification Report from PierCon Solutions LLC, T-Mobile's radio frequency engineers, (i) identifying the significant gaps in service in the areas surrounding the Facility, (ii) demonstrating that the Facility is proposed at the minimum height necessary, and (iii) including an alternatives analysis demonstrating the good faith efforts of T-Mobile to investigate alternative sites for the Facility based on the Town Code; (d) an FCC Compliance Report certifying the Facility will comply with applicable rules and standards regarding radio frequency emissions; (e) Photo Simulations of the Facility; (f) a survey of the Premises; and (g) zoning drawings of the Facility.

## The Public Hearings

42.     On March 17, 2021 Defendant ZBA held a public hearing on T-Mobile's Application (the "March Hearing").

43.     T-Mobile was represented by counsel at the March Hearing and T-Mobile's professional expert witnesses including its civil engineer ("T-Mobile's Engineer"), its radio frequency engineer ("T-Mobile's RF Engineer"), and T-Mobile's land use planner ("T-Mobile's Planner").

44.     T-Mobile presented substantial and uncontroverted evidence in its

Application and at the March Hearing, including testimony from T-Mobile's RF Engineer, that (i) there was significant gap in service that caused a need for the Facility and the Facility would adequately remedy the significant gap in service; (ii) that T-Mobile had made good faith efforts to review alternative sites based on the Town's Code and found no feasible alternatives to the Facility at the Premises; (iii) that because of the way the Premises was developed, the Existing Building and Premises are particularly suited for the proposed use and present special reasons in support of the Application's approval; (iv) locating the Facility in the CC or I zone was not feasible; and (v) that there will be no substantial negative impact if the variances are granted and the Facility approved.

45.     The March Hearing was adjourned and a continuation of the public hearing to review the Application was scheduled for April 21, 2021.

46.     On April 21, 2021 Defendant ZBA held a second public hearing on T-Mobile's Application (the "April Hearing").

47.     T-Mobile was again represented by counsel at the April Hearing and by T-Mobile's Engineer, T-Mobile's RF Engineer, and T-Mobile's Planner, and by its site acquisition specialist ("T-Mobile's Site Acquisition Specialist").

48.     At the April Hearing T-Mobile's RF Engineer continued her testimony and again demonstrated, through the Application materials and admitted exhibits, that T-Mobile is experiencing capacity issues in its network surrounding the proposed Facility, causing significant gaps in service, and that the Facility is necessary to remedy the gaps in service. T-Mobile's RF Engineer also testified and demonstrated that the Facility has been proposed at the minimum height necessary.

49.     T-Mobile's RF Engineer further testified that the exposure to radio

frequency in a worst-case combined percentage would be only 13.5 percent of the FCC maximum permissible exposure, thereby confirming that the Facility would be well within the compliance standard set by the FCC. This testimony was further supported by the FCC Compliance Report submitted with the Application.

50.     At the April Hearing, T-Mobile's Site Acquisition Specialist testified as to how the Premises was selected and provided additional information regarding various alternative locations[3] as requested by Defendant ZBA. T-Mobile's Site Acquisition Specialist demonstrated that T-Mobile made good faith efforts to locate existing facilities that could support the collocation of T-Mobile's Facility, and less intrusive alternative properties, and that there were no existing facilities or available less intrusive properties located within the applicable search area.

51.     At the April Hearing T-Mobile's Engineer testified to the design of the Facility, and that a structural analysis was prepared confirming that the rooftop of the Existing Building could support the proposed antennas.

52.     T-Mobile's Engineer further testified that the use of screening walls to shield views of the antennas was investigated but due to structural reasons, including the increased wind load, screening walls are not able to be installed at the Facility.

53.     T-Mobile's Planner testified at the April Hearing and presented substantial and uncontroverted evidence in support of granting the requested variance and approvals, including, that (i) the Facility is identified as a public benefit and the public interest at stake is benefitted, as evidenced by the issuance of FCC licenses to T-Mobile and the need to remedy the identified significant gap in service in the area of the Facility; (ii) the Facility presents only minimal potential negative impacts, which are only related to aesthetics, and that these potential

---

[3] It must be noted that the majority of the alternative locations that the ZBA requested more information on are located outside of the Town of Harrison.

impacts have been reduced by the use of stealth concealment film and locating certain equipment inside the Existing Building, and that the Facility has been proposed at the minimum height necessary to effectuate service; (iii) the Board can impose reasonable conditions to mitigate the only minimal impact that can be identified including the painting of antennas or use of concealment film, as proposed by T-Mobile; (iv) the positive benefits of the Application far outweigh any identified potential negative criteria.

54.     T-Mobile's Planner further testified as to the special reasons supporting approval of the Application, and demonstrated that the Application meets all the legal standards for granting approval.

55.     T-Mobile's written submissions and presentation at the April Hearing provided substantial and uncontroverted evidence, consistent with applicable New Jersey state law and federal law, that demonstrated that the Application and Facility satisfy the criteria and requirements for the requested variances and site plan approval under both New Jersey State law and federal law.

56.     At the conclusion of T-Mobile's presentation, the ZBA opened the public hearing for public comments; however, most of the public commenters testified about unfounded fears of the preempted topic of the environmental or health effects of radio frequency emissions.

57.     Only four members of the public made comments on the Application, no one else spoke either in favor or in opposition to the Application, and none of the public commenters were qualified experts or presented any credible evidence with respect to alleged impacts to surrounding property values.

58.     At the April Hearing, there were only six out of seven ZBA Members present and because a use variance is required at least five affirmative votes are needed to approve

14

the Application, T-Mobile, through counsel, agreed to extend the applicable review periods and adjourn the public hearing on the Application to May 19, 2021 the ZBA's next available meeting date.

59.     On May 19, 2021 Defendant ZBA held a continuation of the public hearing on T-Mobile's Application (the "May Hearing").

60.     At the May Hearing all seven ZBA members were present and had been present at the prior hearings or had fully reviewed the transcript from the prior hearings.

61.     At the May Hearing T-Mobile's counsel summarized the main points of the Application and the prior testimony from T-Mobile's expert witnesses.

62.     There is no recorded evidence refuting T-Mobile's substantial evidence that it met the criteria for the requested variances and approvals.

63.     There is no recorded evidence refuting T-Mobile's demonstration that it meets the requirements for the grant of the requested variances and approvals.

64.     T-Mobile presented substantial and uncontroverted evidence in its Application and at the public hearings regarding T-Mobile's significant gap in service, and that the Facility would remedy the significant gap in service.

65.     There is no evidence disputing the existence of a significant gap in T-Mobile's service in the vicinity of the Premises and the need for the Facility.

66.     T-Mobile presented substantial and uncontroverted evidence in its Application and at the public hearings demonstrating that T-Mobile investigated thoroughly the possibility of other viable alternatives, but that no other feasible and less intrusive plan was available.

67.     There is no recorded evidence refuting T-Mobile's demonstration that it made good faith efforts to review, and investigated thoroughly, the possibility of other viable and less intrusive alternatives before concluding no other feasible plan was available.

68.     In fact, the record demonstrates that T-Mobile made additional efforts to review alternative locations suggested by the ZBA during the ZBA's review of the Application and proved again that the suggested alternative locations are not available and therefore not viable alternatives.

69.     T-Mobile presented substantial and uncontroverted evidence in its Application and at the public hearings demonstrating that the requested variances and approvals could be granted and the Facility could be approved without causing substantial detriment to the public good and without substantially impairing the intent and purpose of the Town's Zone Plan and zoning ordinance.

70.     There is no recorded evidence that the approval of the Application would cause a substantial detriment to the public good, or substantially impair the intent and purpose of the Town's Zone Plan and zoning ordinance.

71.     There is no substantial evidence to dispute any of the evidence submitted by T-Mobile.

72.     At the close of the May Hearing Defendant ZBA voted to deny the Application in a 5-2 vote with Board Member Chen and Board Member Garrido voting in favor of approving the Application.

73.     There was no deliberation by the ZBA prior to its vote on the Application, and no Board Members stated any reasons for their votes.

74.     The ZBA failed to conduct the required *Sica* balancing test of the positive

and negative criteria.

75.    Only the ZBA Chairman made comments after the vote had concluded, but the ZBA Chairman's comments failed to explain how the Application did not meet the standards set by the MLUL or how the ZBA determined that the negative criteria outweighed the positive criteria or that approving the Application would cause a substantial detriment to the public good.

76.    The ZBA Chairman misrepresented the number of antennas presented in the application and specifically referenced the public comments on the pre-empted topic of the perceived environmental and health effects from radio frequency emissions as part of his reason for voting to deny the Application.

77.    The ZBA Chairman also expressed concern for having some of T-Mobile's equipment located within an equipment room on the first floor of the Existing Building because of potential health effects from radio frequency emissions.

78.    The ZBA Chairman stated that a reason for his voting to deny was the impact the Facility could have to surrounding property values, but there was no credible evidence or expert testimony in the record to support such a finding.

Written Denial and Final Act

79.    On June 15, 2021, Defendant ZBA adopted a written resolution, memorializing the ZBA's denial ("Resolution of Denial") and constituting Defendants' final act under the Communications Act.

80.    The Resolution of Denial ignores the facts in the record before it, is conclusory and not based on the evidence in the record.

81.    The Resolution of Denial states that a reason for the ZBA's denial is that the quantity of antennas was "problematic" without any explanation as to why or how, and appears

to be a reference to the ZBA Chairman's repeated attempts to state that 12 antennas were being proposed when the Application and T-Mobile's representatives clearly stated that only nine (9) were proposed as part of the Application.

82.     The Resolution of Denial also states as a reason for denial that "possible other more suitable locations [was] problematic," which ignores the substantial and uncontroverted evidence in the record demonstrating that there were no viable alternative properties available to T-Mobile.

83.     Beyond the references to the public comments on the environmental effects of radio frequency emissions, and the misstatements regarding the availability of alternative locations, Defendant ZBA provided no discernable reasons for its decision to deny the Application in the Resolution of Denial.

84.     It is clear from the statements that were made by Defendant ZBA during the public hearings, and the conclusory statements contained in the Resolution of Denial, that the denial of T-Mobile's Application was arbitrary and capricious, discriminatory, and not based on substantial evidence in the record.

85.     The Resolution of Denial fails to satisfy the requirements of state law and does not provide any cognizable reasons for why the Application failed to meet the standards set by the MLUL and interpreting New Jersey case law, for approving the requested variances.

86.     The Resolution of Denial states that because the (d)(1)/(d)(3) use variance was disapproved the ZBA did not consider the (d)(6) height variance or the balance of the relief requested, including the (c)(2) bulk variances or the major site plan, and site plan waivers.

87.     Defendants' decision to deny T-Mobile's Application is not supported by the substantial evidence in the record as required by the Communications Act.

18

88.     Without the Facility Plaintiff is materially inhibited from providing its personal wireless services to the Town and surrounding areas.

89.     Defendants have effectively prohibited Plaintiff from the provision of personal wireless services in the Town and surrounding areas.

90.     This action is ripe for determination under the Communications Act and was timely filed.

## IRREPARABLE INJURY, PUBLIC INTEREST, AND BALANCE OF HARDSHIPS

91.     Plaintiff has demonstrated the need for the injunctive relief requested herein, including an order directing Defendants to issue all necessary approvals for Plaintiff to construct its Facility as presented in the Application.

92.     As a result of Defendants' actions, T-Mobile has been, and will continue to be damaged and irreparably harmed absent the relief requested herein.

93.     The harm caused by Defendants' unlawful actions includes, but is not limited to, an effective prohibition on T-Mobile's ability to provide personal wireless service in the Town, and an impairment of T-Mobile's (i) ability to provide its customers in the Town with the high-quality, reliable service they need and rightfully expect; (ii) ability to compete with other providers of telecommunication services; (iii) full use of its existing licenses and business investments; and (iv) good will and business reputation.

94.     The harm that T-Mobile has suffered and is suffering from Defendants' actions and failures to act is not reasonably susceptible to accurate calculation and cannot be fully and adequately addressed through an award of damages.

95.     Moreover, the public interest in promoting competition in the telecommunications arena – the express goal of the Communications Act – has been irreparably

harmed and will continue to be irreparably harmed by Defendants' unlawful actions. T-Mobile's present and future customers, as well as the public at large, are significantly prejudiced by Defendants' unlawful conduct.

96.     In addition, wireless telecommunications are an important component of public safety and emergency response systems, and provide a vital alternative to traditional land lines during times of public crisis. By preventing T-Mobile from installing equipment needed to provide reliable service, Defendants' unlawful actions are causing irreparable harm to the public interest in deprivation of reliable emergency communications.

97.     In contrast to the immediate and irreparable injury being suffered by T-Mobile, its customers, and the public interest, Defendants will suffer no significant injury if the Court issues the requested injunction. Moreover, T-Mobile has met all of the requirements for the approvals it seeks under controlling local codes, state and federal laws and/or precedent.

<u>Allegations Supporting Declaratory Relief</u>

98.     A present and actual controversy has arisen and now exists between the parties regarding their respective legal rights and duties. Plaintiff contends that Defendants' actions are in violation of the Communications Act and New Jersey state law, and that the Plaintiff is entitled to all of the approvals necessary to proceed with the project.

99.     Plaintiff and the public have been and will continue to be adversely affected by Defendants' unlawful acts and any further delay in approval and construction of the Facility.

100.     Accordingly, declaratory relief is appropriate and necessary to adjudicate the extent of Plaintiff's rights and Defendants' duties and authority.

## COUNT I

**Violation of 47 U.S.C. §332(c)(7)(B)(iii) – Effective Denial of the Application Not Based on Substantial Evidence in the Written Record**

101.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

102.    Pursuant to 47 U.S.C. §332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and *supported by substantial evidence contained in a written record.*" (Emphasis added).

103.    The denial of the Application to construct the Facility is inconsistent with the criteria specified in the MLUL and under federal law.

104.    The denial eschews the actual factual evidence in the written record and rests instead on claims unsupported by any credible evidence and in contradiction to the abundant unrefuted evidence presented by T-Mobile and its experts.

105.    The written record does not contain substantial evidence that would lead an objective and reasonable person to deny the Application to construct the Facility.

106.    The denial of the Application to construct the Facility is in violation of, and preempted by, 47 U.S.C. §332(c)(7)(B)(iii), and must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct the Facility.

## COUNT II

**Violation of 47 U.S.C. §332(c)(7)(B)(i)(II) - Effective Prohibition**

107.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

108.    Pursuant to 47 U.S.C. §§332(c)(7)(B)(i)(II), "The regulation of the

placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof  . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." (Emphasis added).

109.    The Facility would adequately address the identified significant gap in coverage, T-Mobile made a good faith effort to review and locate the Facility at the least intrusive site available, and there is no credible, legally recognizable evidence to the contrary contained in the written administrative record.

110.    The Facility is the least intrusive means for adequately addressing the gap in service identified in the area surrounding the Property.

111.    Without the Facility, Plaintiff is materially inhibited from providing its FCC licensed wireless services to the Town and surrounding areas.

112.    Defendants' denial of the Application to construct the Facility effectively prohibits the provision of personal wireless services and facilities to T-Mobile's current and future potential subscribers in violation of § 332(c)(7)(B)(i)(II) of the Communications Act. Accordingly, Defendant ZBA's denial must be set aside and enjoined on that basis. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct the Facility.

## **COUNT III**

**Violation of 47 U.S.C. §332(c)(7)(B)(iv) – Effective Denial of the Application Was Improperly Based on Perceived Health Effects From Radio Frequency Emissions**

113.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

114.    Section 332(c)(7)(B)(iv) of the Communications Act provides that: "No State or local government or instrumentality thereof may regulate the placement, construction and modification of personal wireless service facilities on the basis of the environmental effects of

radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." 47 U.S.C. §332(c)(7)(B)(iv).

115.   Defendants included as a basis for its denial of the Application the unsubstantiated generalized concerns regarding perceived health effects from radio frequency emissions from the Facility, in violation of §332(c)(7)(B)(iv) of the Communications Act and must be set aside and enjoined by the Court. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct the Facility.

### COUNT IV

**Violation of 47 U.S.C. §332(c)(7)(B)(i)(I) – Unreasonable Discrimination**

116.   Plaintiff realleges and incorporates by reference all preceding paragraphs.

117.   Pursuant to 47 U.S.C. §§332(c)(7)(B)(i)(I), "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof – (I) shall not unreasonably discriminate among providers of functionally equivalent services."

118.   Upon information and belief, Defendants have permitted other similar facilities by functionally equivalent personal wireless service providers on similar buildings in the Town.

119.   In violation of 47 U.S.C. §§332(c)(7)(B)(i)(I), Defendants have unreasonably discriminated against T-Mobile. Defendants' discriminatory actions must be set aside and enjoined and this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct the Facility at the Premises.

## COUNT V

### Violation of 47 U.S.C. § 253 - Prohibition of Service,
### Bar To Entry, And Unreasonable Discrimination

120.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

121.    47 U.S.C. § 253(a) provides that "No state or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."

122.    The review processes and criteria employed by the Town pursuant to the Wireless Code, and resulting denial of the Application, obstruct, prevent, and bar entry to the deployment of T-Mobile's telecommunications facilities in the Town.

123.    The Town has unreasonably limited the areas for T-Mobile to locate its Facility, in Town Code §17-82.10(B)(5), by prohibiting wireless facilities from being located in any zoning district except the CC and I zoning districts and further requiring facilities to be more than 250 feet away from a residential zone.

124.    The Application, expert testimony, and materials in support all demonstrate that T-Mobile could not address the significant gap in service identified in the Application by locating the Facility on a property that permits wireless facilities in accordance with the location requirements set by Town Code §17-82.10(B)(5).

125.    Defendants' actions in connection with its review has barred entry of the Plaintiffs' telecommunications facilities in the Town and have the effect of prohibiting the ability of T-Mobile to provide telecommunications services in violation of 47 U.S.C. § 253(a).

126.    Defendants' acts and omissions pursuant to the Town Code are in violation of, and preempted by, Section 253 of the Communications Act, and must be set aside and enjoined

on that basis. Further, this Court should exercise its equitable power to issue an order directing Defendants to issue all local permits and approvals required to construct the Facility.

## COUNT VI

### Violation of the MLUL and New Jersey State Law

127.    Plaintiff realleges and incorporates by reference all preceding paragraphs.

128.    The evidence in the record demonstrated that the Application met the criteria for approval under the MLUL and that such approval was necessary so that T-Mobile could install and operate the Facility and thereby remedy the identified significant gap in service.

129.    T-Mobile demonstrated that it was entitled to the requested variance relief, and approval of the Application.

130.    Defendant ZBA failed to properly evaluate or weigh the positive and negative criteria, and did not explain how, on balance, the approval of the Application and issuance of the requested variances would cause a substantial detriment to the public good. Therefore, the ZBA's decision is arbitrary and capricious and unlawful under the MLUL.

131.    T-Mobile is thus entitled to a judgment and an order compelling Defendants and their agents to issue to T-Mobile the necessary variances and site plan approval as well as any other required approvals and permits, including but not limited to a building permit, necessary for the construction of the Facility at the Premises.

132.    No prior application for the relief sought herein has been made.

WHEREFORE, Plaintiff respectfully demands judgment of this Court on the Counts set forth above as follows:

1.    On the First Count, an order and judgment finding that Defendants' denial was illegal as it was not based on substantial evidence contained in the written record, and

mandating that Defendants immediately grant Plaintiff's request as submitted, and issue all necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

2.      On the Second Count, an order and judgment finding that Defendants have effectively prohibited personal wireless services, and mandating that Defendants immediately grant Plaintiff's request as submitted and issue all necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

3.      On the Third Count, an order and judgment finding that Defendants have improperly based their denial on the environmental effects of radio frequency emissions, beyond the extent that the Facility complies with the FCC's regulations concerning such emissions, and mandating that Defendants immediately grant Plaintiff's request and issue all necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

4.      On the Fourth Count, an order and judgment finding that Defendants have unreasonably discriminated against Plaintiff and mandating that Defendants immediately grant Plaintiff's request and issue all necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

5.      On the Fifth Count, an order and judgment finding that Defendants have prohibited telecommunications service and discriminated against Plaintiff, and mandating that Defendants immediately grant Plaintiff's request and issue all necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

6.      On the Sixth Count, an order and judgment finding Defendants violated the MLUL, and mandating that Defendants immediately grant Plaintiff's request and issue all

necessary permits and authorizations for Plaintiff to immediately begin the necessary work to construct the Facility at the Premises.

        7.     On all Counts, Plaintiff's costs, expenses, and attorneys' fees, and any and all other damages and interest to which Plaintiff is lawfully entitled, together with such other and further relief as the Court deems just and proper.

Dated: Tarrytown, New York

July 14, 2021

                                  SNYDER & SNYDER, LLP
                                  Tarrytown, New York
                                  Tel. (914) 333-0700
                                  Fax (914) 333-0743
                                  Attorneys for Plaintiff

By:    /s/ Robert D Gaudioso
        Robert D. Gaudioso
        Rgaudioso@snyderlaw.net

By:    /s/ David J. Kenny
        David J. Kenny
        Dkenny@snyderlaw.net

## <u>LOCAL CIVIL RULE 11.2 CERTIFICATION</u>

Pursuant to Local Civil Rule 11.2, and 28 U.S.C. § 1746, the undersigned counsel for Plaintiff and member of the bar of this Court hereby declares that the matter in controversy is not presently the subject of any other action pending in any other Court, or of any pending arbitration or administrative proceeding.

SNYDER & SNYDER, LLP

By:     <u>/s/ Robert D. Gaudioso</u>
Robert D. Gaudioso, Esq.
94 White Plains Road
Tarrytown, New York 10591
(914) 333-0700

28